DECISION
Relator, Ellen D. Martin, has filed this original action in mandamus requesting this court to issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its order denying her motion for a change of occupation award under R.C. 4123.57(D) and to enter a new order granting said compensation.
This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, who issued a decision, including findings of fact and conclusions of law. (See Appendix A attached.) The magistrate concluded that respondent-commission had abused its discretion in denying relator's motion for a change of occupation award and that this court should issue a writ of mandamus returning this matter to the commission for consideration of relator's motion under State ex rel. Middlesworth v. Regal Ware, Inc. (2001),93 Ohio St.3d 214.
Respondent-commission filed objections to the decision of the magistrate essentially rearguing issues already adequately addressed therein. For the reasons stated in the decision of the magistrate, the objections are overruled.
Following independent review, pursuant to Civ.R. 53, we find that the magistrate has properly determined the pertinent facts and applied the salient law to them. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it. In accordance with the decision of the magistrate, we issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its order denying relator's motion for a change of occupation award, and to enter an amended order in a manner consistent with this decision that either grants or denies relator's motion for a change of occupation award.
Objections overruled; writ of mandamus granted.
BOWMAN and BROWN, JJ., concur.
 APPENDIX A IN MANDAMUS
In this original action, relator, Ellen D. Martin, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying her motion for a change of occupation award under R.C. 4123.57(D) and to enter an order granting her a change of occupation award.
Findings of Fact:
1. Relator was employed for many years by respondent Columbus Fair Auto Auction, Inc., as an "auto painter." On June 14, 1999, relator filed a workers' compensation claim on a form captioned "First Report of an Injury, Occupational Disease or Death (`FROI-1')." On this form, relator described the causal events of her occupational disease as "continued exposure to paint fumes and/or solvents." In support of her claim, relator attached a report, dated April 4, 1999, from Donald L. McNeil, M.D., who had examined her in March 1999. Dr. McNeil's report states:
 * * * She has a three year history of intermittent symptoms, which began as an itchy throat and progressed into loss of voice and sore throat. Events have occurred with increasing frequency lately. The patient describes that symptoms of itchy throat and loss of voice occur when she is in the paint shop. She states the [sic] her "throat swells shut" and this has required three visits to the emergency room. The last episode was severe enough to cause a sore throat for two months with associated loss of voice. The patient states symptoms are better when she is at home on the weekends. She has also noticed transient loss of "circulation" of the left hand over the last two to three months in cold weather and in cold water. The patient has muscle and joint discomfort, which is worse in the morning. She has fatigue on a daily basis with lethargy each morning for two to three months. * * *
* * *
 Environment: Non-contributory except for the paint fumes, which she is exposed to at work.
* * *
 * * * [T]he patient is exposed to polyisocyanate, which is a known irritant to the eyes, nose and throat. The other compounds include urethane and epoxy primer catalyst which are all equally capable of causing a similar reaction.
 I believe the patient has an occupationally related disorder and I am willing to explore this possibility further with the patient. * * *
2. On October 18, 1999, the Ohio Bureau of Workers' Compensation ("bureau") mailed an order allowing the claim for "fume/vapor upper respiratory inflammation." The claim is assigned No. 99-423589. Columbus Fair Auto Auction, Inc., is a state-fund employer.
3. On October 2, 2000, relator moved for a change of occupation award under R.C. 4123.57(D) and 4123.68. In support, relator submitted a report, dated November 2, 1999, from Dr. McNeil, stating:
 * * * [Relator] has a permanent disability related to exposure to paint, solvent and fumes. It is in her best interest to never return to this line of work and should change occupations.
4. On November 1, 2000, relator was examined at the bureau's request by William M. Chinn, M.D., a pulmonary specialist. Dr. Chinn reported:
IMPRESSION
 Asthmatic bronchitis possibly diisocyanate induced bronchial asthma.
* * *
 * * * It does seem that her symptoms of wheezing and shortness of breath as well as the upper airway symptoms have a direct temporal relationship to her exposures on the job. I do suspect that diisocyanates are present and do involve a risk of bronchospasm and asthmatic syndrome.
 It would be inadvisable for Mrs. Martin to return to her former position of employment. Re-exposures to irritating fumes, especially containing diisocyanates, would certainly reactivate her bronchospastic tendency and perpetuate an asthmatic syndrome. If she could work off-site away from the painting she should do well.
 Currently she is doing well from a respiratory standpoint without any bronchodilator medications since she has been away from her exposures.
5. In March 2001, the bureau mailed an order granting relator's motion for a change of occupation award. The employer administratively appealed the bureau's order.
6. On May 10, 2001, relator was examined by Herbert A. Grodner, M.D., on behalf of the employer. Dr. Grodner reported:
 * * * I do feel that she has "fume/vapor" upper respiratory inflammation as well as bronchospasm and occupational asthma. I do believe that these conditions were caused by her job position as an auto-body painter. I do not feel that she is capable of returning to her former position of employment as an auto-body painter. This condition would be expected to reproduce upon further exposure to these materials.
7. Following a May 18, 2001 hearing, a district hearing officer ("DHO") issued an order vacating the bureau's order and denying relator's motion. The DHO's order states:
 The claimant may have sustained a significant medical impairment due to her exposure to fumes. She was an auto painter. However, Change of Occupation Compensation under R.C. 4123.57(D) applies only to dust related causation. Despite the substantial agreement between claimant's physician, Dr. McNeil and employer's physician, Dr. Grodner, the claimant does not qualify under the statute.
 State ex rel. Wooten v._IC, 8 Ohio App.3d (1982) held that, in a claim allowed for carcinoma from chromate exposure, change of occupation compensation was proper. The Court cited R.C. 4123.68(X) as working with R.C. 4123.57(D). The provision is now in (AA). However, Wooten still involved a dust related claim.
 The claim here involves fumes from pain[t]. The allowed condition is fume/vapor upper respiratory inflammation. The Hearing Officer finds that change of occupation compensation applies only to dust-related claims.
8. Relator administratively appealed the DHO's order of May 18, 2001. In support of her appeal, relator obtained a report, dated July 13, 2001, from David M. Manuta, Ph.D. Dr. Manuta has a Ph.D. in chemistry. He reviewed the medical reports from Drs. Grodner, McNeil and Chinn. Dr. Manuta's report states:
 Ms. Martin has developed an apparent sensitivity to the fumes generated from the chemicals used in automotive body and painting applications which entrained the "dust" particles produced in the "overspray" in automotive body and painting applications. The medical reports describing the Claimant's condition are clearly indicative of prolonged exposure to or the inhalation of "dusts" or dry solids containing diisocyanates and other non-volatile lung irritants such as titanium dioxide.
 Ms. Martin has also noted that her symptoms became worse "at work" and that her symptoms became less severe when she was "away from work." It is my opinion, based on a reasonable degree of scientific certainty/probability, that Ms. Martin inhaled the fumes, which led to her occupational disease, for which her workers' compensation claim has been allowed. She necessarily was also inhaling dry, solid "dust" particles, containing hazardous chemicals such as diisocyanates, epoxies, strontium chromate and titanium dioxide. The inhalation of these dry, solid "dusts" are directly implicated in regard to Ms. Martin's medical condition/sensitivity.
9. Following a July 17, 2001 hearing, a staff hearing officer ("SHO") issued an order stating:
 The order of the District Hearing Officer is affirmed with further reasoning.
* * *
 The injured worker developed sensitivity to the compounds in automobile spray paint in the course of her employment with the employer's used car auction. The allowance of her claim is finalized.
 The concept that the injured worker must avoid spray paint materials and solvents is not in dispute.
 She is not necessarily, however, eligible for an award of compensation pursuant to Revised Code 4123.57(D).
 The Staff Hearing Officer has considered the opinion of David M. Manuta, Ph.D., but is not rejecting it as a scientific opinion. The Staff Hearing Officer rules to the contrary, however, that the present recognized conditions and exposures are not compensable as dust related occupational diseases within the meaning or for the purposes of Revised Code 4123.57(D).
 As stated above, nothing herein is to be construed as the rejection of Dr. Manuta's report to preclude its consideration or adoption in subsequent proceedings.
 The injured worker has filed State ex rel. Wooten v. Industrial Commission 8 Ohio App.3d (1982), State ex rel. Bowman v. Industrial Commission (1991), and State ex rel. _Middlesworth v. Regal Ware (1999).
 The Staff Hearing Officer may not rely upon them to grant Revised Code 4123.57(D) relief for the reason that every one of those cases involved specific dust related allowances. Absent specific dust related allowance or additional allowance, Revised Code 4123.57(D) is simply inapplicable.
 The Staff Hearing Officer notes that the Court of Appeals in Bowman Supra and the Supreme Court in State ex rel. Bowman v. Industrial Commission 65 O.S.3d 317 (1992) held that the mere mention of the word "dust" in allowance could not preclude relief pursuant to Revised Code 4123.57(A) (former paragraph B). The Supreme Court specifically held that "industrial asthma" cases are very different from silicon, coal dust, asbestos, and even chromium, beryllium, and uranium dust related cases. This is precisely the position of the District Hearing Officer whose order is now affirmed.
 The clear reciprocal corollary of the Supreme Court's unanimous decision is that the mere mention of "dust" in an allowance or diagnosis does not automatically qualify an injured worker for Revised Code 4123.57(D) relief.
 Finally, nothing in this order is to be construed as precluding a potential Revised Code 4123.57(D) award in the event of a dust related additional or clarified allowance in this file.
10. On August 14, 2001, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of July 17, 2001.
11. On October 16, 2001, relator, Ellen D. Martin, filed this mandamus action.
Conclusions of Law:
It is the magistrate's decision that this court issue a writ of mandamus as more fully explained below.
R.C. 4123.57(D) states in part:
 If an employee of a state fund employer makes application for a finding and the administrator finds that the employee has contracted silicosis as defined in division (X), or coal miners' pneumoconiosis as defined in division (Y), or asbestosis as defined in division (AA) of section 4123.68 of the Revised Code, and that a change of such employee's occupation is medically advisable in order to decrease substantially further exposure to silica dust, asbestos, or coal dust and if the employee, after the finding, has changed or shall change the employee's occupation to an occupation in which the exposure to silica dust, asbestos, or coal dust is substantially decreased, the administrator shall allow to the employee an amount * * *.
R.C. 4123.68(AA) states in part:
 All conditions, restrictions, limitations, and other provisions of this section, with reference to the payment of compensation or benefits on account of silicosis or coal miners' pneumoconiosis apply to the payment of compensation or benefits on account of any other occupational disease of the respiratory tract resulting from injurious exposures to dust.
When R.C. 4123.57(D) is read in pari materia with R.C. 4123.68(AA), eligibility for change of occupation benefits extends to all dust-induced occupational diseases of the respiratory tract. See State ex rel. Middlesworth v. Regal Ware, Inc. (2001), 93 Ohio St.3d 214, 216-217; State ex rel. Wooten v. Indus. Comm. (1982), 8 Ohio App.3d 296.
Here, the commission's decision to deny a change of occupation award turned upon the absence of any indication in the official description of the claim allowance that the allowed condition was induced by dust. The claim allowance description, as determined by the bureau in its order, indicates only that the condition was induced by fumes or vapor. Because the claim allowance description did not indicate that dust contributed to the condition, the commission felt that it was precluded from making a finding, based upon Dr. Manuta's report, that inhalation of dust containing hazardous chemicals contributed to relator's allowed condition. In short, the commission believed and determined that the claim allowance description was determinative of relator's motion for a change of occupation award.
The opinion of the Supreme Court of Ohio in Middlesworth, supra, seems to suggest that the commission abused its discretion here in denying the change of occupation award on the basis stated in its order.
In Middlesworth, the claimant's occupational disease was allowed for "interstitial pulmonary fibrosis with bilateral apical lung disease" and she filed for a change of occupation award under R.C. 4123.57(D). The commission denied the motion because Middlesworth did not suffer from asbestosis, silicosis or coal miners' pneumoconiosis. In reading R.C.4123.57(D) in para materia with R.C. 4123.68, the Middlesworth court found that eligibility for change of occupation benefits extends to all dust-induced occupational diseases. The court found that the claimant retains eligibility for change of occupation compensation if all applicable criteria are met. The court returned the cause to the commission for further proceedings on the issue of change of occupation compensation consistent with its opinion.
Obviously, the official claim allowance description in Middlesworth, "interstitial pulmonary fibrosis with bilateral apical lung disease" does not itself indicate that the condition is dust-induced. Presumably, on the remand for further proceedings under the decision, the commission would need to consider evidence other than the claim allowance description in determining whether the condition was dust-induced, and that claimant met all applicable criteria.
The magistrate notes that nothing in R.C. 4123.57(D) or 4123.68
indicates that the injurious exposure to dust must be specifically indicated in the official claim allowance description as a prerequisite to obtaining compensation for a change of occupation.
R.C. 4123.95 provides as follows:
 Sections 4123.01 to 4123.94, inclusive, of the Revised Code shall be liberally construed in favor of employees and the dependents of deceased employees.
Given R.C. 4123.95's command, the magistrate is reluctant to read into R.C. 4123.57(D) and 4123.68 a requirement that the claim allowance description itself contain an indication of an injurious exposure to dust.
Given the above analysis, the magistrate finds that the commission abused its discretion by denying relator's motion for a change of occupation award. The commission was required to consider and weigh Dr. Manuta's report and specifically his findings that inhalation of dust containing hazardous chemicals contributed to the upper respiratory inflammation allowed in the claim. Contrary to relator's contention here, however, the commission is not required to accept Dr. Manuta's report in reaching a determination on the motion for a change of occupation award.
Accordingly, it is the magistrate's decision that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its order denying relator's motion for a change of occupation award, and to enter an amended order in a manner consistent with this magistrate's decision that either grants or denies relator's motion for a change of occupation award.